UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

JAMES LARKIN,
   Plaintiff
   v.
JEFFREY ARMSTRONG, et al,
   Defendants

Case No. 4:18-CV-65-JVB-JEM

## DECLARATION OF Plaintiff

Plaintiff James Larkin a pro se prisoner

On 4/10/18 I was in a cell extraction an this Is what I know about the events. When the E squad came in my cell the First person to punch me was defendant Krause, he hit me In my head several times this was while I was on my Feet. Once they got me down an In cuffs or subdued defendant Tolbot grabed me by my head and hair and shamed my face and head into floor spliting my right eye brow open an pulling out my hair. Then defendant Bach got over me an droped a few knees Into my back and ribs. AT this Point Defendant Bradford got over me and started punching me In the Left side of my head and face with his Left gloved hand Id guess 15-30 times. Once I came out my cell and started for the Hallway I seen defendant Eakins right outside the control pod he could have seen everything from where he was and he wasn't dist walking up hed been there

I Affirm under penalties of perjury, that the Foregoing Representation are true and correct

9/30/20                                        James Larkin

(Exhibit L)

Statement of disputed facts

Defendants - Two E-squad officers took Larkin back to his cell where Larkin became Irate because items were missing from his cell

Plaintiff - Larkin did not become irate because items were missing. Larkin made a Good faith effort to address the issues, but CO's Instigated the situation looking for reaction Telling Larkin "Do what you Got to do I don't care"

Defendants strip cell status ment removing all items from the offenders cell that could be used to harm either himself or Staff.

plaintiff - They also took my mat, clothing, toilet and water

Defendants - Prior to the administration of OC spray and cell extraction, Defendants Eakins read the shift supervisor briefing to the cell extraction team to go over the protocol and plan

Plaintiff - In the briefing defendants must have failed to Listen because so much protocol was missed. The

Defendants when the cell extraction team opened Larkins cell door Larkin squeezed the bag of OC spray under his arm and against his side to propel the OC spray at the team

plaintiff - I just threw it bag and all, It hit the shield going over the E squad onto rec pad window

Defendants Larkin was immediatly physically combative and actively tried to fight the Team Larkin testified that he grabbed defendant Bradford to throw defendant Bradford behind him

plaintiff - I never tried to fight anyone. I did push Bradford past me or throw him so to speak I didn't throw anyone. If I had been fighting the team There would have been Report of conducts filed against me.

Defendants while the team had to use physical force to restrain and secure Larkin the team did not use more force than necessary to accomplish this.

plaintiff - that is openion there is nothing to support that claim. There is no video defendants Armstrong said the amount of force to restrain Larkin isn't the question what they done once I was restrained is why we are here.

Defendants Defendant Armstrong did not have a clear view of Larkin or the cell extraction team while they were inside Larkins cell from the control room.

Plaintiff - The way the pods are you can see 360° from the control room as Armstrong mentioned "Organized in an octagon shape;" the pods shaped Like an octagon with control room in center. With my door open and me and the team being against right wall Defendant Armstrong could see what was going on inside my cell from Control room. The way the pods set up an Larkins door open Larkin could be seen

Defendants - Defendant Armstrong did not order the cell extraction team to stop doing anything or otherwise intervene with the cell extraction because he could not see or hear anything inappropriate happening.

plaintiff. Like I said with my door open an with me upon the right cell wall Armstrong could see it all. Defendants were doing as they was ordered so why would he try an stop it.

Defendants - for facility security reasons, policy dictated that Defendant Eakins remain in a secure location off pod during cell extractions

plaintiff - I seen him in hallway outside A pod control Room

Defendants - Defendant Eakins did not observe the cell extraction

plaintiff - Eakins did see in we talked about it at a later date.

Defendants - Generally, after receiving notice that an offender had been restrained Defendant Eakins would leave the secure location to observe the team removing the offender from the pod so that Defendant Eakins could evaluate the offenders condition and the team condition.

plaintiff. He was on pod pluss, where IS his evaluation of me. I was beat and covered from head to toe in Blood isnt that note worthy

while Defendant Eakins does not recall ~~witness~~ watching Larkin being removed from the pod to go to decontamination, it is very possible Larkin saw him watching the team taking him off pod to the shower

Defendants - while Defendant Eakins does not recall watching Larkin being removed from the pod to go to decontamination, IT is very possible Larkin saw him watching the team taking him off the pod to the shower.

plaintiff: Eakins is trien to play with words. decontamination and shower is the same. A If he was on pod to see me to shower he was there for IT all from my cell to where I seen Eakins is a short walk He didnt get from his office or the safe room that fast

~~Defendants~~

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JAMES LARKIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 4:18-cv-00065-JVB-JEM |
| | ) |
| JEFFREY ARMSTRONG, | ) |
| MICHAEL BACH, | ) |
| CALVIN BRADFORD, | ) |
| EVIN EAKINS, | ) |
| ANDREW KRAUSE, | ) |
| TIM RYAN, and | ) |
| GEOFFREY TALBOT | ) |
| | ) |
| Defendants. | ) |

### Declaration of Lieutenant Evin Eakins

I, Evin Eakins, am an adult competent to testify who has personal knowledge of the following and declare under penalty of perjury:

1. On April 10, 2018, I was employed by the Indiana Department of Correction as a Lieutenant at Westville Control Unit. I worked as the shift supervisor for the Control Unit for the 6:00 a.m. to 6:00 p.m. shift.

2. That day, I assembled a cell extraction team for Offender Larkin because he had assaulted an officer with an unknown liquid.

3. Throwing an unknown liquid on staff constitutes battery on staff. The policy at the time dictated that whenever an offender threw an unknown liquid on staff, the offender would be ordered to submit to mechanical restraints so that officers could place the offender on "strip cell" status for 24 hours. Strip cell status meant

1

removing all items from the offender's cell that could be used to harm either himself or staff. If an offender refused to submit to restraints, then a cell extraction team would be assembled to remove the offender from his cell.

4. The purpose of placing an offender on strip cell status after throwing unknown liquid on staff was twofold. First, it ensured that any item the offender could use to collect and throw liquid got removed from the offender's cell. Second, it served as a corrective measure to deter the offender from assaulting staff with unknown liquids again in the future.

5. Even if Offender Larkin's cell had been shaken down for contraband earlier in the day, strip cell status for Offender Larkin still would have been warranted. Officers needed to remove any items that could be used to collect and throw liquid.

6. As shift supervisor, I would read out the shift supervisor briefing in what we call the "ready room," where cell extraction teams meet prior to an extraction to go over the protocol and plan. On camera, in the ready room, I read aloud the cell extraction shift supervisor briefing. A true and accurate copy of the cell extraction briefing for Offender Larkin's extraction is attached as Exhibit A.

7. As the shift supervisor, policy dictated that I remain in a secure location off the pod during emergency situations such as cell extractions. Should something go wrong, like if the offender being extracted managed to physically overtake the extraction team, I needed to be in a secure location to direct staff how to respond accordingly. See 8

8. While I do not recall with certainty where I was during Offender Larkin's cell extraction, I was likely in my office. I typically used my office as the secure location, so that I could continue doing my job of running the Control Unit as shift supervisor while the cell extraction took place. *See 7*

9. I did not observe the cell extraction of Offender Larkin.

10. I also did not administer any of the three OC sprays that Larkin alleges I administered.

11. Generally, an officer would administer OC spray if an offender refused orders to submit to mechanical restraints in order to regain compliance and to ensure facility and staff safety. As a part of the staggered escalation of use of force, one of the extraction team members would have ordered Offender Larkin to submit to mechanical restraints more than once in an attempt to gain compliance before resorting to the cell extraction.

12. After receiving notice that an offender had been restrained, I would leave the secure location to observe the team removing the offender from the pod. I *what was it* did this both to evaluate the offender's condition and the extraction team members' conditions. While I do not specifically recall Offender Larkin being removed from the *Same thing* pod to go to decontamination, it is very possible that Offender Larkin saw me watching him being removed from the pod and taken to the shower. *so you didn't evaluate me*

13. As a required part of the cell extraction protocol, an officer would record all of the team's actions in writing in case something happened with the video

3

recording. A true and accurate copy of the recorder's notes for Offender Larkin's cell extraction is attached as Exhibit B.

14. Furthermore, policy required that all cell extraction team members submit use of physical force reports following the administration of chemical agents like OC spray and the administration of physical force during a cell extraction. All cell extraction team members were required to submit use of physical reports to me for review and approval. I would then submit the reports to the Captain on duty. The use of physical force reports attached as Exhibit C are true and accurate copies of the use of physical force reports submitted following the cell extraction of Offender Larkin. *you was not there*

**I AFFIRM, UNDER PENALTIES OF PERJURY, THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

9-16-20
Date

Evin Eakins

# WESTVILLE CONTROL UNIT
## SHIFT SUPERVISOR BRIEFING

My name is G. EAKINS, I am the ☒ 6 AM - 6 PM Shift Supervisor.
for the Maximum Control Facility.   ☐ 6 PM - 6 AM Shift Supervisor.

Current time is: 2:32 PM   Date is: 4-10-2018

Camera Operator is: KNOCKE. Please state the time and date as it appears in the camera.

This Team has been assembled to
☒ Extract offender    Name Larkin, James
☐ Deploy Pepperball   DOC# 206339
☐ Deploy water hose
☐ Deploy OC Chemical agent
☐ Deploy ICE Shield

The reason for this action is:

OFFENDER ASSAULTED STAFF WITH Bodily FLUID AND IS REFUSING TO SUBMIT TO MECHANICAL RESTRAINTS TO BE PLACED ON STRIPCELL.

If the offender is extracted, he shall be offered medical treatment.

If the offender complies with the order to cuff up, he shall be shaken down and placed in full medical medical restraints. His cell shall be stripped out of all property or items harmful to himself or staff. The offender shall be placed in Cell: A2-106

This offender ☒ does not   ☐ does have a Documented history of weapons.

If Chemical Agents are used, once under compliance, the offender shall be given an order to strip down to his boxer shorts and be decontaminated with cool running water, dried off, and given fresh clothing. If OC is deployed, the Administrative Warning will be read to the offender.

At the conclusion of this mission, all staff using or witnessing the use of physical force shall submit "Use of Force" reports. Staff shall not leave duty until the Shift Supervisor approves his/her reports.

At this time, I am going to turn this briefing over to the Team Supervisor: SGT. J. BOWEN
Please identify your team and dates and proceed with this mission.

Lt. Eakins Dec. Exhibit A                                 Exhibit B Page 5 of 17

## WESTVILLE CONTROL UNIT
### CELL EXTRACTION RECORDER NOTES

Page #1

DATE: 4/10/18

TIME: 1432

A7-106

OFFENDER (NAME & NUMBER): Larkin, James   #206339

EXTRACTION TEAM MEMBERS:
- #1 Bradford, Calvin
- #2 Bach, Michael
- #3 Krause, Andrew
- #4 Ryan, ~~doctor~~ Tim
- #5 Talbot, Geoffery

SHIFT SUPERVISOR: LT Eakins, Evan

ASS'T SHIFT SUPERVISOR:

MEDICAL: ~~LPN Larson~~ Nurse Hutchison, Katherine

CAMERA: Knocke, Jason

RECORDER: Spigel, Trevor

---

- Camera on @ 1432 hrs
- Briefing @ 1432 hrs
- Briefing complete @ 1437 hrs
- Sgt. on pod @ 1438 hrs
- First order given @ 1438 hrs
- First OC burst administered @ 1438 hrs
- Second order given @ 1448 hrs
- Second OC burst administered @ 1448 hrs
- Third order given @ 1458 hrs
- Third OC burst administered @ 1458 hrs
- Final order given @ 1512 hrs
- Entry Team enters @ 1512 hrs
- Entry Team exits @ 1514 hrs
- Decon started @ 1515 hrs
- Decon ended @ 1519 hrs

- Entered medical @ 1520 hrs
- Exited medical @ 1609 hrs
- Team enter cell w/ offender @ 1609 hrs
- Team exits cell @ 1612 hours
- Debriefing @ 1615 hours
- Debriefing complete @ 1618 hours
- Camera off @ 1618 hours

Lt. Eakins Dec. Exhibit B

Exhibit B Page 6 of 17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JAMES LARKIN, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 4:18-cv-00065-JVB-JEM |
| JEFFREY ARMSTRONG, MICHAEL BACH, CALVIN BRADFORD, EVIN EAKINS, ANDREW KRAUSE, TIM RYAN, and GEOFFREY TALBOT | ) |
| Defendants. | ) |

### Declaration of Captain Jeffrey Armstrong

I, Jeffrey Armstrong, am an adult competent to testify who has personal knowledge of the following and declare under penalty of perjury:

1. I am currently employed by the Indiana Department of Correction as a Captain at the Westville Correctional Facility, overseeing the Industrial Complex.

2. At the time of Offender Larkin's cell extraction, in April 2018, I was a lieutenant in the Westville Control Unit, which is the maximum security unit for Westville Correctional Facility. I was also the field commander for the emergency squad ("E-squad"). Part of my duties as E-squad field commander involved observing cell extractions to be ready to request activation of the E-squad and direct the E-squad's actions in case something went wrong during the extraction.

Exhibit D Page 1 of 3

USDC IN/ND case 4:18-cv-00065-JVB-JEM   document 86-4   filed 09/18/20   page 2 of 3

3. During Offender Larkin's cell extraction, I was standing in the control room in the center of the pod, around 20 yards away from his cell. The "pod" is the name for a floor of the Control Unit. It is called a pod because the rooms on the floor are organized in an octagon shape, surrounding the control room in the middle.

4. I witnessed one of the cell extraction team members administer three OC sprays to attempt to gain Offender Larkin's compliance with the orders to submit to mechanical restraints. Prior to every cell extraction, offenders are given opportunities to comply with orders to submit to mechanical restraints before the officers escalate the use of force to a cell extraction.

5. I did not have a clear view of Offender Larkin or the cell extraction team while they were in Offender Larkin's cell for the extraction. The cells in the Control Unit are small, and I could not see all of the team's actions while they were in Offender Larkin's cell from where I was standing.

6. I did not see or hear the team do anything improper or that would violate the cell extraction protocol. I did not order the cell extraction team to stop doing anything or otherwise intervene because I could not see or hear anything inappropriate happening.

Exhibit D Page 2 of 3

USDC IN/ND case 4:18-cv-00065-JVB-JEM   document 86-4   filed 09/18/20   page 3 of 3

I AFFIRM, UNDER PENALTIES OF PERJURY, THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

9/15/2020
Date

*Jeffrey Armstrong* (signature)
Jeffrey Armstrong

**From:** "Cornett, Chad" <ccornett@idoc.IN.gov>
**To:** "Carter, Thomas D" <TdCarter@idoc.IN.gov>, "Eakins, Evin J" <EEakins@idoc.IN.gov>
**Cc:** "McKinney, Corey" <CMckinney@idoc.IN.gov>, "Gann, Kenneth" <KNGann@idoc.IN.gov>, "Hert, Sharon" <SLHert@idoc.IN.gov>
**Subject:** RE: Cell Extraction video 4/10/18
**Date:** Wed, 11 Apr 2018 06:54:35 -0400
**Importance:** Normal

---

What happened?

**From:** Hert, Sharon
**Sent:** Wednesday, April 11, 2018 5:07 AM
**To:** Carter, Thomas D <TdCarter@idoc.IN.gov>; Eakins, Evin J <EEakins@idoc.IN.gov>
**Cc:** McKinney, Corey <CMckinney@idoc.IN.gov>; Cornett, Chad <ccornett@idoc.IN.gov>; Gann, Kenneth <KNGann@idoc.IN.gov>
**Subject:** Cell Extraction video 4/10/18

For your information:

The cell extraction video that was done with offender James Larkin 206339 at WCU wasn't completely recorded. The actual extraction of the offender was not recorded. There is only 20:32 minutes on the SD card.

Sharon Hert
Internal Affairs Officer
Investigations & Intelligence



IDOC0000315



Ex. K

**REPORT OF CONDUCT**
State Form 39580 (R4 / 11-13)
INDIANA DEPARTMENT OF CORRECTION

Case number:
Date assigned (month, day, year):

INSTRUCTIONS: Type or Print clearly

NOTE TO REPORTING EMPLOYEE: This report is to be filled out in triplicate. All copies shall be forwarded to the screening officer, in accordance with the Disciplinary Code for Adult Offenders.

| Field | Value |
|---|---|
| Name of offender | James Larkin |
| DOC number of offender | 206339 |
| Facility | WCU |
| Housing unit | A7-106 |
| Date of incident | 4-10-18 |
| Time of incident | Approx 3:13 PM |
| Place of incident | A7-106 |
| Date report written | 4-10-18 |
| Offense | Battery |
| Code number | 102 |

DESCRIPTION OF INCIDENT:

At the approx date and approx time, I officer Krause entered the cell A7-106 belonging to Offender Larkin doc # 206339. I officer Krause while attempting to secure the offender's leg was kicked by Offender Larkin. This caused immediate, severe pain in my right hand, during the cell extraction.

Disposition of physical evidence, if any:

Witness(es), if any:

Signature of reporting employee
Name and title (please print): Krause, Andrew C/O
Screening officer:

Signature of immediate supervisor
Name and title (please print): James Bottorff Captain
Date: 4-10-18   Time: 10:00 PM

FOR SCREENING OFFICERS ONLY

Copy of report delivered to offender by:
Date report delivered (month, day, year):
Signature of offender receiving copy:
Note here if offender refuses to sign:

DISTRIBUTION: Original - Offender; Copy - Central Office; Copy - Facility Packet

IDOC0000025



IN/ND case 4:18-cv-00065-JVB-JEM   document 86-2   filed 09/18/20   page 17 of 17

**Indiana Department of Correction**
**WESTVILLE CORRECTIONAL FACILITY**
**MEMORANDUM**

TO: Captain Lewis, Gary
FROM: Officer Ryan, Tim
DATE: 4/10/2018
SUBJECT: Offender Larkin, James (A7-106)

On Tuesday April 10, 2018 at 2:32 P.M., Lt. Eakins assembled a cell extraction team for Offender Larkin, James #206339 in Cell A7-106. The Team consisted of Sgt. Bradford, Calvin, Officer Bach, Michael, Officer Krause, Andrew, myself Officer (Ryan, Tim), and Sgt. Talbot. At approximately 2:38 P.M., the cell extraction team entered A-pod and stop at the door for the 7-8 range. Sgt. Bowen, Officer Knocke, Jason and Officer Spiegel, Trevor approached A7-106.

After 3 rounds of OCV and 3 refused orders to submit to mechanical restraints, Sgt. Bowen called the cell extraction team to offender Larkins door. Sgt. Talbot place the key in the lock Sgt. Bowen gave Offender Larkin an order to submit to mechanical restrains. Offender Larkin refused, Sgt. Talbot turned the key and Sgt. Bowen opened the door allowing the cell extraction team to enter cell A7-106. As we entered the cell, Offender Larkin became physically combative with the team by throwing an orange liquid substance and fighting. With help from the team Offender Larkin was placed on the cell floor. Once on the floor Offender Larkin was turned to his stomach and mechanical restraints were applied. He was assisted to his feet and escorted out of A7-106 to the receiving shower for decontamination. Sgt. Bradford read the O.C. administrative warning. After Offender Larkin stated he was done with decontamination he was escorted to the where he received a medical treatment from Nurse Hutchison, Katherine and Doctor Jackson, James.

At 4:09P.M. Offender Larkin was escorted from the A-pod medical room back to cell A7-106. He was placed chest down on his bed with his head towered the back wall of the cell. Sgt. Talbot instructed offender Larkin to stay in the position that he would be placed in until the cell door closed. The team removed the restrains and then exited the cell. The door was closed with no further incidents.

Lt. Eakins Dec. Exhibit C

Exhibit B Page 17 of 17