UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JAMES LARKIN, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 4:18-cv-00065-JVB-JEM |
| JEFFREY ARMSTRONG et al., | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendants, by counsel, respectfully submit this reply in support of their motion for summary judgment [ECF 86] and state the following in support:

### I.  Defendants timely filed for summary judgment

Larkin argues that because Defendants filed their summary judgment motion more than 30 days following the close of discovery, Defendants untimely filed their motion. But, Federal Rule of Civil Procedure 56(b) provides that "[u]nless a different time is set by local rule *or the court orders otherwise*, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery" (emphasis added). In ECF 61, the scheduling order, this Court set the dispositive motion deadline as September 18, 2020. Accordingly, Defendants timely filed their summary judgment motion.

**II.     This Court should adopt the facts provided by Defendants that are not specifically controverted by Plaintiff**

In Larkin's exhibits submitted with his Response, Larkin provides a statement of disputed facts that addresses some, but not all, of Defendants' material facts not in dispute provided in Defendants' memorandum of law in support of their summary judgment motion [ECF 87 at 3–9]. [*See* ECF 90-1 at 2–3.] Federal Rule of Civil Procedure 56(c) requires a party asserting that a fact is genuinely disputed must support that assertion by either citing to materials in the record, by showing that the party cannot produce admissible evidence to support the fact, or by showing that the cited evidence does not establish the presence of a genuine dispute. For Defendants' facts that Larkin did not specifically address in his statement of disputed facts, this Court should consider those facts as undisputed.

In Larkin's statement of disputed facts, Larkin overwhelmingly does not cite to evidence in the record. Larkin provides several assertions about events that transpired, such as stating he just threw the bag of collected OC spray at the team rather than squeezing the bag as Defendant Bradford described, but Larkin does not cite to any evidence to support these assertions. Furthermore, many of Larkin's assertions contain speculation, like arguing that there would have been a conduct report issued for fighting the team, that Defendants failed to listen to the shift supervisor briefing, and that Defendant Armstrong could see inside his cell from where he was in the control room. Speculation and assertions unsupported by evidence do not create a genuine issue of fact. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012) (noting that inferences

"supported by only speculation or conjecture" do not create genuine issues of fact) (internal citations omitted).

Though pro se litigants are granted leeway in evaluating a complaint at the outset of litigation, this is not the case at the summary judgment stage. *Schaefer v. Newton*, 868 F. Supp. 246, 250 n. 2 (S.D. Ind. 1994), *aff'd*, 57 F.3d 1073 (7th Cir. 1995) ("While a district court, in considering the allegations in a pro se litigant's complaint, must overlook the fact that the allegations are unartfully pleaded… this does not mean that the Court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure [56(c)(4)…"). "The 'liberal construction' afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure." *Id.* (citing *Averhart v. Arrendondo*, 773 F.2d 919 (7th Cir. 1985) (the generous treatment accorded pro se litigants does not exempt them from both the substantive and procedural rules of law and does not authorize a separate set of rules for them)).

Rule 56(e) provides that if a non-movant "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." *See also Beard v. Banks*, 548 U.S. 521, 527 (2006) (where nonmovant had failed to specifically challenge the facts identified in the movant's statement of undisputed facts, the court deemed this as admitting the validity of those facts). Defendants served Larkin with the notice required by Local Rule 56-1(f), and the notice included copies of Rule 56 and Local Rule 56-1. [ECF 88.] This Court

should find that Larkin has admitted the validity of Defendants' Statement of Material Facts Not in Dispute.

### III. The use of OC spray did not constitute excessive force and Defendant Eakins is entitled to summary judgment on this claim

Because Defendant Eakins was not personally involved in administering OC spray, and because the undisputed facts taken in the light most favorable to Larkin do not support an inference that prison officials used OC spray on Larkin maliciously in violation of the Eighth Amendment, this Court should grant summary judgment in Defendant Eakins' favor on the excessive force claim related to the use of OC spray.

To show that the use of OC spray constituted excessive force, a claimant must show that the defendant used the OC spray for the "sole purpose of punishment or for the infliction of pain." *See Soto v. Dickey*, 744 F.2d 1260, 1271 (7th Cir. 1984); *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 667 (7th Cir. 2012) (quoting *Whitley v. Albers*, 475 U.S. 651, 670 (1986) (for the purposes of the Eighth Amendment, use of force is excessive "when it entails 'the unnecessary and wanton infliction of pain'")); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (for Eighth Amendment claims, "the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm"). The use of OC spray "is appropriate 'when reasonably necessary . . . to subdue recalcitrant prisoners.'" *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (quoting *Soto*, 599 F.3d at 1270).

Larkin argues that using OC spray three times when Larkin was in his cell, unarmed and not a threat, constituted excessive force. However, the use of OC spray on

4

an inmate inside of a cell is not per se unconstitutional. *See Soto*, 744 F.3d at 1270 ("The use of mace. . . or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constituted cruel and inhuman punishment. . . and this is so whether the inmate is locked in his prison cell or is in handcuffs"). The undisputed facts show that Larkin refused to submit to mechanical restraints so that correctional officers could conduct a strip cell after Larkin threw liquid on Officer McGowan. [ECF 90 at 3–6.] There is no evidence that non-party Sergeant Bowen used the OC spray in unnecessary quantities or for any other reason than to try to gain Larkin's compliance with orders to submit to mechanical restraints so that he could be strip celled.

With respect to qualified immunity Larkin argues that even though Defendant Eakins did not administer the OC spray, he is responsible for the pod where Larkin was housed and was the shift supervisor. [ECF 90 at 3, ¶ 6.] First, in order for an official to be liable for a constitutional violation, the official must have been personally involved in the alleged deprivation, or the alleged deprivation occurred "at his direction or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal alterations omitted). There is no evidence that Defendant Eakins directed Sergeant Bowen to use the OC spray in a malicious or sadistic manner or for the sole purpose of inflicting pain, or that Defendant Eakins knew or consented to an unconstitutional application of OC spray. Second, it is well established that supervisor liability does not give rise to liability under Section 1983. *See, e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009).

Larkin has not met his burden to show that Defendant Eakins should not receive qualified immunity for this claim. Once a defendant raises the qualified immunity defense, the burden falls on the plaintiff to demonstrate a violation of a clearly established right. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011). While a plaintiff does not have to provide "a case directly on point," the plaintiff must show that "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Larkin has not identified any precedent that would clearly establish that Defendant Eakins' actions violated the Constitution. Accordingly, he is entitled to qualified immunity on this claim.

Because Defendant Eakins was not personally involved in administering the OC spray, and because Defendant Eakins should receive qualified immunity, he is entitled to summary judgment on this claim.

### IV. Defendants Armstrong and Eakins are entitled to summary judgment on both the excessive force claim and failure to intervene claim

As argued in Defendants' brief in support of their summary judgment motion [ECF 87 at 17–18], Defendant Armstrong and Defendant Eakins were not personally involved in the alleged use of excessive force. For Section 1983 liability to attach to a defendant, the defendant must have been personally involved in the alleged deprivation, or the alleged deprivation must have occurred "at his direction or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal alterations omitted). Larkin has not provided evidence that Defendant Eakins or Defendant Armstrong directed the cell extraction team to carry out the extraction in an

6

unconstitutional manner, or that the cell extraction occurred in an unconstitutional manner with their knowledge and consent. Accordingly, Defendants Eakins and Armstrong are entitled to summary judgment on the excessive force claim related to the cell extraction.

### A. Larkin does not establish a genuine issue of fact precluding summary judgment for the failure to intervene claim against Defendant Eakins

Larkin states in his declaration that as he exited his cell, he saw Defendant Eakins standing "right outside the control pod" and that "he could have seen everything from where he was and he wasn't just walking up." [ECF 90-1 at 1.] This does not create a genuine issue of fact that would preclude summary judgment in Defendant Eakins' favor. Larkin argues that Defendant Eakins would not have had time to go from wherever he was located off-pod during the extraction room to the location on the pod where Larkin observed him following the cell extraction [ECF 90 at 3, ¶6], but Larkin does not provide evidence for this assertion. Furthermore, while Larkin argues that Defendant Eakins is not entitled to qualified immunity on the failure to intervene charge, Larkin does not provide precedent that shows that it is clearly established that Defendant Eakins' actions gave rise to a constitutional violation.

Because Larkin does not provide evidence sufficient to controvert Defendant Eakins' declaration that he did not observe the cell extraction and does not create a this Court should grant summary judgment in Defendant Eakins' favor on the failure to intervene claim.

**B. Larkin does not establish a genuine issue of fact precluding summary judgment for the failure to intervene claim against Defendant Armstrong**

Because Larkin has not provided evidence to create a genuine dispute of fact as to whether Defendant Armstrong had a reasonable opportunity to intervene, this Court should grant summary judgment in Defendant Armstrong's favor.

Larkin argues that Defendant Armstrong is not entitled to summary judgment on the failure to intervene claim because he argues that it was Defendant Armstrong's "job to observe cell extractions" and that the "reason Defendant Armstrong was on A Pod was to direct and observe the E-squad." [ECF 90 at 3, ¶ 6.] Defendant Armstrong stated in his declaration that he observed cell extractions "to be ready to request activation of the E-squad and direct the E-squad's actions in case something went wrong during the extraction." [ECF 86-4 at 1, ¶ 2.] Both things can be true—Defendant Armstrong could be in the control room observing the extraction, ready to request activation of the E-squad should something happen like an inmate escaping the cell, while also not having a clear view inside the cell and not being able to see all of the team's actions.

Larkin also argues in his statement of disputed facts that because his cell door was open, and because of the octagon shape of the pod, Defendant Armstrong could see inside the cell. Larkin does not cite to evidence in the record to support this assertion that Defendant Armstrong could see what was happening inside Larkin's cell. Speculation about what Defendant Armstrong could or could not see does not create a genuine dispute of fact precluding summary judgment. *See Carroll v. Lynch*, 698 F.3d

561, 565 (7th Cir. 2012) (noting that inferences "supported by only speculation or conjecture" do not create genuine issues of fact) (internal citations omitted).

Finally, Larkin also challenges whether Defendant Armstrong is entitled to qualified immunity, arguing that he is not entitled to qualified immunity because Defendant Armstrong's job is "to see the E-squad at all times in case something went wrong." [ECF 90 at 3, ¶ 7.] It is not clearly established that failing to intervene in a cell extraction when an official does not have a clear view into a cell, cannot see all of the cell extraction team's actions, and did not see or hear anything that indicate a constitutional violation was happening, gives rise to a constitutional violation.

Because Larkin does not provide evidence sufficient to controvert Defendant Armstrong's declaration that he did not have a clear view of the cell extraction team during the cell extraction, Larkin has not established a genuine issue of fact precluding summary judgment. Accordingly, this Court should grant summary judgment in Defendant Armstrong's favor on the failure to intervene claim.

### V. Defendants Bradford, Ryan, Talbot, Krause, and Bach are entitled to summary judgment on the Eighth Amendment excessive force claim and failure to intervene claim

Larkin argues that without video of the cell extraction, Defendants' claim that they did not use excessive force can be disputed [ECF 90 at 2, ¶ 4.] However, courts have found or affirmed summary judgment in favor of prison officials in cases involving excessive force claims even without video or with unclear video. *See*, *e.g.*, *Boyd v. Pollard*, 621 F. App'x 352, 355–56 (7th Cir. 2015) (where a video did not clearly show the events transpiring during a cell extraction, and the parties told different

9

versions of what happened outside the camera's view, summary judgment was warranted because no juror could reasonably conclude that "given the professional behavior of the guards and minor injury. . . that the guards attacked Boyd outside of the camera's view" and Boyd's allegations of being "bodyslammed onto a concrete floor" and sustaining "numerous blows to his head and face" did not match his actual injury of a small laceration above his eye); *Davis v. Wright*, No. 3:94-cv-13-RM, 1996 WL 204492 (N.D. Ind. Feb. 14, 1996) (summary judgment granted for prison officials when, although the video did not clearly show what happened, the video did show the inmate putting up "a violent struggle" requiring all five cell extraction team members to subdue him and there were no sounds or movements suggesting the team beat or clubbed the inmate, and no evidence supported a finding that the officers acted maliciously or sadistically to cause harm).

Furthermore, Larkin argues the video shows that Defendant Krause lied in his report because the video does not show Larkin kicking Defendant Krause's hand, and Larkin challenges the credibility of Defendant Eakins as a result. [ECF 90 at 2, ¶ 5.] But, as Defendants noted in their memorandum, the TASER video provides limited visibility of the cell, and it stops immediately after Larkin's hands are announced as secured. [*See* ECF 87 at 6, ¶¶ 26–27.] The team secured Larkin's hands first, and then his legs. [*Id.*]

While Defendants maintain that Larkin's description of the events does not line up with other evidence in the record, Defendants also recognize this may require the Court to engage in determining the credibility of testimony or weighing the evidence, which is prohibited during the summary judgment stage. *See*, *e.g.*, *Wolf v. Buss (America)*

10

*Inc.*, 77 F.3d 914, 922 (7th Cir. 1996). To the extent this Court finds that summary judgment is improper for the claims against Defendants Bradford, Talbot, Ryan, Krause, and Bach, summary judgment is still proper for Defendant Eakins and Armstrong for the reasons described above. "[P]artial summary judgment can serve a useful brush-clearing function even if it does not obviate the need for a trial." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund.*, 778 F.3d 593, 606 (7th Cir. 2015).

## VI. Conclusion

For the foregoing reasons, and for the reasons provided in Defendants' summary judgment motion [ECF 86] and memorandum of law in support of summary judgment [ECF 87], Defendants request this Court grant summary judgment in their favor.

Respectfully submitted,

OFFICE OF THE INDIANA ATTORNEY GENERAL

By:   Courtney L. Abshire
      Deputy Attorney General
      Attorney No. 35800-49
      *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that on November 2, 2020, I mailed, by United States Postal Service, first-class postage prepaid, the document to the following non-CM/ECF participants:

James Larkin
DOC #206339
Indiana State Prison
1 Park Row
Michigan City, IN 46360

                              By:    Courtney L. Abshire
                                          Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 234-7019
Fax:    (317) 232-7979
E-mail: Courtney.Abshire@atg.in.gov