UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JAMES LARKIN,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 4:18-CV-65-JVB-JEM<br>) |
| BRADFORD, *et al.*,<br>    Defendants. | )<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 86] filed on September 18, 2020. James Larkin, a prisoner without a lawyer, proceeds on Eighth Amendment claims against seven defendants for using excessive force against him while extracting him from his cell. Larkin filed a response to the motion, and the moving defendants filed a reply. The motion is ripe for ruling.

## LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on

allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## MATERIAL FACTS[1]

On April 10, 2018, Larkin was a prisoner at Westville Correctional Center. He was upset because he believed the defendants had improperly taken items from his cell, and they were not addressing his complaints about it. (Dep. James Larkin 8:18-24, ECF No. 86-1). Larkin knocked or threw water at an officer to get the attention of a supervisor. Because he had thrown an "unknown"[2] liquid on staff, he was placed on "strip cell" status: that is, he would be taken out of his cell so that everything that could be used to throw liquid or harm somebody could be removed. (Decl. Evin Eakins ¶¶ 2-4, ECF No. 86-2). Larkin "refused to comp[ly]" with this procedure. *Id.* at 14. A team of at least six officers—including Defendants Calvin Bradford, Michael Bach, Andrew Krause, Tim Ryan, and Geoffery Talbot—was assembled to extract Larkin from his cell, supervised by Defendant Evin Eakins. *Id.* at 6-7.

The extraction began at 2:38 p.m. Larkin had covered the window to his cell, so the officers could not see inside. (Decl. Calvin Bradford ¶ 3, ECF No. 86-3). The officers first asked him to submit to handcuffs while he was still in the cell by putting his hands through a slot in the door. (Decl. Evin Eakins, ¶ 3, ECF No. 86-2; Extraction Video 4:04-4:24, ECF No. 73). Larkin refused,

---

[1] The facts herein are undisputed unless otherwise indicated.

[2] Defendants now concede that the liquid was water, *see* ECF 86 at 4, but at the time of the incident they reported it as an "unknown" liquid, and proceeded accordingly. *See* ECF 86-2 (Declaration of Evin Eakins), ¶ 2-3. Larkin does not claim that the officers knew the liquid was water at the time of the incident.

and seconds later Sergeant James Bowen[3] discharged pepper spray[4] into Larkin's cell through the TV cable cord hole, using a panel outside of the cell. (Decl. Evin Eakins p. 14, ECF No. 86-2). Ten minutes later, Bowen asked Larkin again: "You cuffin' up?" Larkin refused and yelled, among other things: "Come and get me, f*cker!" Bowen discharged another round of pepper spray. *Id.*; (Video at 13:32-13:46, ECF No. 73). At 2:58 p.m., after another ten-minute wait, Bowen asked Larkin to "cuff up" for a third time. Larkin refused, and Bowen administered a third round of pepper spray. The team concluded they would have to enter the cell and forcibly remove Larkin. (Decl. Evin Eakins pp. 14-15, ECF No. 86-2).

At 3:12 p.m., the team gathered around Larkin's door. Bowen gave a final order for Larkin to cuff up, but he refused. *Id*. at 14. Larkin yelled "first one who comes through that door, I'm f*cking him up." (Decl. Calvin Bradford ¶ 4, ECF No. 86-3). Bowen opened the door, and the team entered, led by Bradford. *Id*., ¶ 2; (Decl. Evin Eakins p. 15, ECF No. 86-2). Unknown to the officers, Larkin had been collecting the pepper spray in a bag. As Bradford entered, Larkin threw or squirted the pepper spray back at the officers. (Decl. Evin Eakins p. 13, ECF No. 86-2; Decl. Calvin Bradford ¶ 5, ECF No. 86-3). Larkin was pinned to the ground by several officers. (Decl. Calvin Bradford ¶¶ 6-7, ECF No. 86-3; TASER video[5], ECF 73).

The parties disagree about how much force was used to subdue Larkin. Defendants claim Larkin was "combative," fighting and kicking at them. *See* (Decl. Evin Eakins pp. 7-10, ECF

---

[3] Bowen was not named as a defendant.

[4] The parties also refer to this substance as "OC spray"; oleoresin capsicum is the active ingredient in pepper spray. *See* Tidwell, R. and Brandon Willis, *Tear Gas and Pepper Spray Toxicity*, available at https://www.ncbi.nlm.nih.gov/books/NBK544263 (last visited May 14, 2021).

[5] Defendants produced two videos. One of them shows the preparation of the extraction team and the first two rounds of pepper spray, but not the extraction itself. The defendants say the extraction was not recorded due to technical error. ECF 87 at 2. A second video (the "TASER video") shows 50 seconds of footage focused on the entrance to the cell, but the view of the extraction is heavily obscured.

No. 86-2. Krause reported that he was kicked by Larkin and suffered a "sharp, immediate pain," which turned out to be a broken right ring finger. *Id*. at 10, 14. As the officers describe it, they eventually pinned Larkin against the wall, swept his legs from under him, moved him to the floor, and placed restraints on his hands, then on his feet, using no more force than necessary. *Id*.

Larkin, citing the TASER video, claims he "never threw one punch or kick." (Resp. 2, ECF No. 90). He admits he physically resisted the officers, but states that he did so only because he thought they were attacking him. *Id*. Larkin says that when Bradford entered, Larkin "grabbed him and threw him behind me." (Larkin Dep. 23:1-9, ECF No. 86-1). He declares that Krause punched him in the head "several times" while he was still on his feet. (Decl. Larkin p. 1, ECF 90-1). Once he was subdued, he claims that several officers struck him: Talbot "grab[b]ed me by my head and hair and slam[m]ed my face and head into [the] floor spli[t]ting my right eyebrow open"; Bach "drop[p]ed a few knees into my back and ribs"; Bradford "started punching me in the left side of my head . . . I'd guess 15-30 times." *Id*.

Larkin was taken to a decontamination shower, and then he seen by the Westville medical staff. (Larkin Dep. 34:10-23, ECF No. 86-1). He suffered a 2.5-centimeter cut to his right eyebrow, which was bleeding down his face and required stitches. *See* (Resp. to Pl.'s Req. Produc. 7-10 (photos), ECF No. 72; Resp. to Pl.'s Req. Produc. pt. 2, 9, ECF No. 72-1). In addition to treating the cut, a nurse gave him a "head to toe assessment" and recorded generally normal findings, including that he had no pain or signs of injury to his abdomen, pelvis, lower back, and scalp. *See* (Resp. to Pl.'s Req. Produc. pt. 2, 11-12, ECF No. 72-1).

**ANALYSIS**

Larkin proceeds on three excessive force claims: one against Eakins based on the team's use of pepper spray, one against all defendants for physically attacking him during the cell extraction, and another against all defendants for failing to intervene to stop the attack.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

**A. Pepper spray claim**

Larkin initially claimed that Eakins should be held liable for spraying his cell with pepper spray before the extraction began. He now concedes that Eakins was not the officer who sprayed his cell, but still seeks to proceed against Eakins because he supervised the extraction. (Resp. 3-4, ECF No. 90). He has not introduced evidence showing that Eakins was personally responsible for the allegedly wrongful use of the pepper spray. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("[T]o be liable under section 1983, [a defendant] must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."). Regardless, summary judgment is appropriate on this claim because the use of the pepper spray was not a constitutional violation.

The Seventh Circuit has held that pepper spray can be used when reasonably necessary to subdue "recalcitrant" prisoners. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010). Specifically,

when a prisoner verbally refuses a legitimate order to leave his cell, the prison can use pepper spray to extract him. *See, e.g., Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012).

In this case, the record shows that Larkin repeatedly disobeyed the officers' orders to "cuff up" so that he could be taken from his cell. To the contrary, Larkin told the officers they would have to physically remove him from the cell, and that he would attack the first one who tried. The officers used the pepper spray as a final alternative to physical confrontation and gave Larkin several chances to comply while they administered it. Although undoubtedly painful for Larkin, the officers' use of the pepper spray was not an Eighth Amendment violation.

Larkin argues that it was unnecessary for the officers to remove him from his cell because an unarmed man in an empty cell is no threat. But, the officers had a right to extract Larkin regardless of whether he was a "threat." Prison officials are afforded "wide-ranging deference in the adoption and execution of policies and practices . . . to preserve internal order and discipline." *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986). There is no dispute that the prison had a policy to extract prisoners from their cells when they throw unknown liquid at staff or that Larkin triggered this policy by throwing liquid at an officer. Larkin's disagreement with the policy does not create an Eighth Amendment violation.

### B.  Physical extraction claim

Larkin next claims that the officers used excessive force on him when they physically removed him from his cell. Larkin does not designate any evidence showing that Defendants Eakins, Armstrong, or Ryan used excessive force on him directly, so the claim must be dismissed against those defendants. He does present a declaration in which he specifically accuses Defendants Krause, Talbot, Bach and Bradford of hitting him.

1. <u>Krause</u>

The Court first considers Defendant Krause, who allegedly punched Larkin in the head "several times" when he was still on his feet. Resolving all facts and inferences in Larkin's favor, Larkin was still actively resisting when Krause punched him. Larkin had threatened to fight the officers as they came into his cell, threw pepper spray at them when the door opened, and "grabbed" and "threw" Bradford, the first officer to enter. The fact that Larkin was fighting back—allegedly with some success—strongly supports a finding that Krause's use of force was not excessive, because Larkin still posed a danger to the officers. *McCottrell*, 933 F.3d at 663.

Two other factors support summary judgment for Krause. First, the officers had already tried to limit the force they needed to use against Larkin, using repeated verbal orders and pepper spray before resorting to physical confrontation. Second, Larkin has presented no evidence of injury caused by Krause. Larkin had a cut on his eyebrow that he says was caused by Talbot, *see supra*, but presents no other evidence of significant injury.[6] The nurse's examination did not indicate any other injury that could have been inflicted by Krause's punches. The Court concludes that a reasonable jury could not find that Krause used excessive force in subduing Larkin.

2. <u>Bach and Bradford</u>

Next, the Court considers Defendants Bach and Bradford, who allegedly struck Larkin after he was subdued. In his declaration, Larkin alleges that Bach "drop[p]ed a few knees into my back and ribs," while Bradford "started punching me in the left side of my head . . . I'd guess 15-30 times." (Decl. Larkin 1, ECF 90-1). Larkin argues that because the video provided by the

---

[6] The photos of Larkin show that he had several smaller cuts or abrasions on his face, which did not appear to be bleeding, and which were not specifically addressed in the examining nurse's notes. *See* (Resp. to Pl.'s Req. Produc. 9, ECF No. 72). To the extent Larkin seeks to attribute these cuts to excessive force by one of the officers, the Court finds that this was *de minimis* force, insufficient to sustain an Eighth Amendment claim. *See Fillmore v. Page*, 358 F.3d 496, 503-04 (7th Cir. 2004) (explaining that minor force that does not "shock the [conscience] of mankind" cannot sustain an excessive force claim).

defendants does not clearly show what happened to him during the extraction, his declaration creates an issue of material fact that precludes summary judgment.

At the summary judgment stage, the Court construes all facts in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor. *Ogden*, 606 F.3d at 358. However, the absence of conclusive video and the fact that Larkin alleges an attack do not foreclose summary judgment. The Court must consider Larkin's facts in combination with the undisputed facts, and assess whether a jury viewing all of these facts could reasonably find that the officers used excessive force. *See*, *e.g.*, *Boyd v. Pollard*, 621 F. App'x 352, 355-56 (7th Cir. 2015) ("Initially it may appear as though this fact dispute would preclude summary judgment. However, summary judgment would have been improper only if a jury reasonably could find excessive force based on [the prisoner's] assertions.") (citations omitted).

In this case, summary judgment is appropriate for Bach and Bradford based on all the available facts. There is no allegation of significant injury to the left side of Larkin's head (the side where Bradford allegedly punched him 15 to 30 times), or to his back or ribs. On examination, the nurse specifically noted no pain, tenderness, bleeding, or other sign of injury to his scalp, cervical spine, abdomen, pelvis, or lower back. (Resp. to Pl.'s Req. Produc. pt. 2, 11-12, ECF No. 72-1). The available videos of the incident, although incomplete, do not appear to show unprofessional conduct by the officers. Viewing all these facts together, no reasonable jury could find that Bach or Bradford used excessive force against Larkin. *See Boyd*, 621 F. 3d at 356 ("[N]o juror who viewed the video could reasonably conclude—given the professional behavior of the guards and minor injury sustained by Boyd—that the guards, when outside the camera's view, attacked Boyd."); *Keller v. Trefz*, 66 F. App'x 44, 46 (7th Cir. 2003) (finding a prisoner's "allegations of

8

serious injury [un]substantiated by medical records" did not preclude summary judgment on excessive force); *Bennett v. Sobek*, 336 F. Supp. 3d 933, 939-940 (E.D. Wis. 2018).

3. Talbot

Finally, the Court considers Talbot, the officer who allegedly caused the cut over Larkin's eye. Specifically, Larkin claims that after he was subdued, Talbot "grab[b]ed me by my head and hair and slam[m]ed my face and head into [the] floor split[t]ing my right eyebrow open and pulling out my hair." (Decl. Larkin p. 1, ECF 90-1). Larkin's allegation of a cut to his right eye is supported by the record.[7] The medical records specifically indicate that he sustained a 2.5 centimeter cut on his eye requiring stitches, and the photos show a large cut that was bleeding profusely. Viewing all the evidence, a reasonable jury could find that Talbot used excessive force against Larkin.

The defendants argue that Talbot is entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The precedential cases do not need to be "on all fours" with the defendant's alleged misconduct; there must simply be "settled authority that would cause him to understand the illegality of the action." *Id.* (citations omitted).

---

[7] Larkin does not point to any evidence supporting the claim that his hair was pulled out, and it appears from the photos that his head was almost entirely shaven. *See* (Resp. to Pl.'s Req. Produc. 7-10, ECF No. 72).

9

Defendants' qualified immunity argument is premised on their own version of events; that is, that the officers used force only to advance the legitimate purpose of extracting Larkin from the cell. However, the Court does not adopt the movant's disputed facts in assessing qualified immunity because "the ordinary rules governing summary judgment apply in that situation." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) (citations omitted); *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) ("If there are genuine issues of fact concerning [whether there was an Eighth Amendment violation], a defendant may not avoid trial on the grounds of qualified immunity."). Crediting Larkin's version of events, he has plausibly alleged that Talbot slammed his head into the ground after he was already subdued to maliciously inflict pain, which is clearly recognized as an Eighth Amendment violation. *See Hendrickson*, 589 F.3d at 891; *Bogan v. Stroud*, 958 F.2d 180, 185 (7th Cir. 1992). Accordingly, summary judgment will be denied as to Talbot.

### C. Failure to intervene claim

Finally, Larkin brings a claim against all seven officers for failing to intervene to stop the use of excessive force. Because the only remaining excessive force claim is against Talbot, the court considers whether any defendant could be held liable for failing to stop Talbot's alleged attack. A defendant can be liable for failing to intervene if he has "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail[s] to do so." *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004) (quoting *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000)).

Larkin does not provide evidence showing that Talbot threatened him before slamming his head, or that the other officers knew this attack was imminent before it happened. He does not allege that Larkin slammed his head more than once, or over a long period of time, so it is not clear how they could have intervened during the attack itself. Affording all reasonable facts and

inferences to Larkin, he has not presented evidence showing that the officers had a "realistic opportunity" to stop Talbot from slamming his head into the ground. Accordingly, summary judgment will be granted on this claim.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment [DE 86]. The motion is denied as to the claim against Sgt. Talbot for using excessive force against him on April 10, 2018, in violation of the Eighth Amendment and granted as to all other claims. The Court **DISMISSES** Defendants Bradford, Eakins, Krause, Bach, Armstrong, and Ryan, as no claims remain against them.

SO ORDERED on May 19, 2021.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT

11