UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JAMES LARKIN,                      )
                                   )
        Plaintiff,                 )
                                   )        CASE NO.  4:18-CV-65
v.                                 )
                                   )        HON. THERESA L. SPRINGMAN
GEOFFREY TALBOT,                   )
                                   )
        Defendant.                 )

DEFENDANT TALBOT'S MOTIONS *IN LIMINE*

Pursuant to the Court's Order, Defendant, Geoffrey Talbot, herewith moves the Court for

an order *in limine*[1] which prohibits the Plaintiff, his counsel or representatives, or any witness from

referring to or attempting in any way to offer evidence as to the following matters:

1. *Any suggestion that Defendant Talbot is insured or indemnified by the Indiana Department of Correction against liability for any adverse judgment.*

It is anticipated that Plaintiff may suggest that Defendant Talbot is insured against liability

on the claims alleged in this case, or that the Indiana Department of Correction (IDOC) is obliged

to pay any judgment that might be entered against him. Defendant Talbot expects Plaintiff to

attempt to put this before the jury to make it easier for jurors to award significant money damages

against Defendant Talbot. It is reasonable that if Plaintiff is allowed to suggest this to the jury it

would tend to persuade them to conclude that monies to pay an adverse judgment would come

---

[1] "Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial," *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013); and federal district courts "have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *VanGilder v. Baker,* 2008 WL 2225647, at *4 (N.D. Ind. May 27, 2008) (quoting *Dartey v. Ford Motor Co.*, 104 F.Supp.2d 1017, 1020 (N.D. Ind. 2000)). Motions *in limine* are granted "where the evidence is clearly inadmissible for any purpose," *VanGilder* (citing *United States v. Caputo*, 313 F.Supp.2d 764, 768 (N.D. Ill. 2004)); motions *in limine* are also granted when the probative value of the putative evidence, though relevant, is substantially outweighed by unfair prejudice or jury confusion. Fed. R. Evid. 403.

from a large, impersonal municipal corporation, and not the individual defendant.

As the Court observed in *Brooks v. Solis*, No. 15 CV 3429, 2017 WL 2908767, at \*3 (N.D. Ill. July 7, 2017), "[t]he probative link between the [the government's] indemnification obligations and whether [the defendant] acted wrongfully is too tenuous to be relevant and would be similar to signaling to the jury that their liability is covered by insurance." Even if probative of a legitimate matter, evidence of indemnification is precluded because "it would be unfairly prejudicial under the balancing test of Fed. R. Evid. 403." *Figueroa v. City of Chicago*, No. 97 C 8861, 2000 WL 520926, at \*1 (N.D. Ill. Apr. 24, 2000); *see also Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)("In the general case courts exclude evidence of indemnification out of fear that it will encourage a jury to inflate its damages award because it knows the government – not the individual defendants – is footing the bill.") Analogous to this concept is Fed. R. Evid. 411, which provides that an individual defendant has insurance to cover an adverse judgment is never admissible to prove negligence or an indicate an ability to pay. *See*, *e.g.*, *VanGilder v. Baker,* 2008 WL 2225647, at \*3 (N.D. Ind. May 27, 2008); *see also King v. Harrington*, 447 F.3d 531, 533 (7th Cir. 2006). Thus, any reference to insurance or indemnification, either in *voir dire* or at trial, should be barred.

    **2.**   ***Any reference to any state tort claims Plaintiff tried to raise.***

In his Complaint, Plaintiff attempted to bring claims for the state torts of assault and battery. [ECF 1, at ¶48]. However, all state tort claims were dismissed by the Court in its Screening Order after it found that, "Larkin does not mention filing a tort claims notice and it would not be plausible to infer that he has. Therefore[,] he may not proceed on a State law claim." [ECF 11, at 3]. Because Plaintiff never amended his Complaint to reflect that he had filed a tort claims notice and it is too late to do so now, he should be barred from testifying about, referring to, or otherwise claiming that Defendant Talbot and any other previous defendant assaulted him, battered him, or committed a different state tort against him on April 10, 2018.

3.  *Any reference to the fact that Superintendent Mark Sevier, Major Chad Cornett, Lt. Kevin Halloran, and/or Mental Health Officer Michelle A. Boren were once defendants in this case or that they somehow caused or contributed to Plaintiff's claimed constitutional injury, including through a policy, practice, or custom.*

Prior defendants, Superintendent Mark Sevier, Major Chad Cornett, Lt. Kevin Halloran, and/or Mental Health Officer Michelle A. Boren were dismissed from this action pursuant to the issuance of the Court's Screening Order on May 6, 2019. [ECF 11]. Plaintiff alleged that Mr. Sevier and Major Cornett were previously "placed on notice of the abusive conduct of defendants Bradford, Talbot…by a number of complaints and grievances over many months and years" and that they were deliberately indifferent when they did not "take disciplinary or other actions to curb the known pattern of physical abuse of inmates" by the other defendants. [ECF 1, at ¶¶39, 49]. However, in its Order, the Court noted that Mr. Sevier and Major Cornett were not municipalities and, therefore, Plaintiff's claims about their alleged failure to discipline employees who allegedly used excessive force on prior occasions, failed to state a claim. [ECF 11, at 3].

Plaintiff also alleged that Mr. Sevier, Major Cornett, Lt. Halloran, and Ms. Boren retaliated against him for covering his window and engaging in a hunger strike. [EF 1, at ¶50]. Nonetheless, the Court also noted that the duration and severity of the conditions described by Plaintiff, when Mr. Sevier, Major Cornett, Lt. Halloran, and Ms. Boren allegedly placed Plaintiff "on strip cell to punish [Plaintiff] for covering his cell door and window and for engaging in a hunger strike" "do not constitute an atypical and significant hardship." [ECF 11, at 3-4].

Thus, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that: (1) these former defendants caused or contributed to his injuries; (2) there was any "known pattern of physical abuse of inmates" by the remaining or former defendant(s); or (3) there was any retaliation against Plaintiff for the actions that transpired on April 10, 2018.

4. *Any reference to the use of pepper spray or O.C. spray being excessive force, unwarranted, or unconstitutional.*

Plaintiff initially alleged that, "in retaliation for [his] actions which was attributed to [his] mental illness, [Plaintiff] was repeatedly sprayed by Defendant Eakins with pepper spray (O.C.) while locked in [his] cell…" [ECF 1, at ¶30]. However, the claims against Lt. Evin Eakins, as well as the claims involving the use of pepper or O.C. spray, were disposed of by this Court's May 19, 2021, summary judgment Order. [ECF 95]. In the Order, the Court held, "the use of the pepper spray was not a constitutional violation" and "the record shows that Larkin repeatedly disobeyed the officers' orders to 'cuff up' so that he could be taken from his cell." [ECF 95, at 5-6].

It is, nonetheless, anticipated that Plaintiff may seek to introduce testimony or other evidence claiming that the use of pepper spray or O.C. spray was unnecessary, unjustified, or otherwise in violation of his Eighth Amendment rights. However, these arguments have already been examined by this Court and have been found to be unpersuasive and not amounting to an Eighth Amendment violation. The Court has already found that, "the officers had a right to extract Larkin regardless of whether he was a 'threat,'" and "prison officials are afforded 'wide-ranging deference in the adoption and execution of policies and practices…to preserve internal order and discipline.'" [ECF 95, at 6].

Moreover, Plaintiff never alleged the use of pepper or O.C. spray by Defendant Talbot – only (former) defendant Eakins. Thus, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that: (1) Defendant Talbot used or directed the use of pepper or O.C. spray; or (2) that the use of pepper or O.C. spray was unnecessary, unjustified, or otherwise in violation of Plaintiff's Eighth Amendment rights.

5. *Any reference to the fact that Lt. Evin Eakins, Lt. Jeffrey Armstrong, or Ofc. Tim Ryan were once defendants in this case or that they somehow caused or contributed to Plaintiff's claimed constitutional injury.*

Plaintiff initially alleged that Lt. Eakins, Lt. Armstrong, and Ofc. Ryan "beat [him] in the head, face, and body," that he was punched and kicked, and that one of them grabbed him by the head/hair and slammed his "face/head onto the floor continuously." [ECF 1, at ¶¶31-33]. Plaintiff also alleged that former defendants Eakins, Armstrong, and Ryan did not intervene when other defendants allegedly kicked or punched Plaintiff or when a taser gun was pointed at Plaintiff. [ECF 1, at ¶34]. Finally, Plaintiff generically alleged that former defendants Eakins, Armstrong, and Ryan either failed to intervene or actively engaged in behavior that violated his Eighth Amendment rights. [ECF 1, at ¶47].

Despite these initial claims, the Court, in its May 19, 2021, Order on summary judgment, held that Plaintiff did not "designate any evidence showing that Defendants Eakins, Armstrong, or Ryan used force on him directly, so the claim must be dismissed against those defendants." [ECF 95, at 6]. The Court also held that Plaintiff, "has not presented evidence showing that the officers had a 'realistic opportunity' to stop Talbot from slamming [Plaintiff's] head into the ground" and granted summary judgment on those claims as well. [ECF 95, at 10-11].

As such, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that: (1) former defendants Eakins, Armstrong, and/or Ryan were once defendants to this case; (2) that they somehow caused or contributed to his alleged constitutional injury; or (3) that any defendant had "a realistic opportunity to step forward and prevent a fellow officer from violating [Plaintiff's] rights through the excessive use of force, but failed to do so." *Fillmore v. Page,* 358 F.3d. 496, 505-06 (7th Cir. 2004) (quoting *Miller v. Smith,* 220 F.3d 491 (7th Cir. 2000)).

6.  *Any reference to the fact that Ofc. Andrew Krause and/or Ofc. Michael Bach were once defendants in this case or that they somehow caused or contributed to Plaintiff's claimed constitutional injury.*

Plaintiff initially alleged that Ofc. Krause and Ofc. Bach "beat [him] in the head, face, and body," that he was punched and kicked, and that one of them grabbed him by the head/hair and slammed his "face/head onto the floor continuously." [ECF 1, at ¶¶31-33]. Plaintiff also generically alleged that former defendants Krause and Bach either failed to intervene or actively engaged in behavior that violated his Eighth Amendment rights. [ECF 1, at ¶47]. Plaintiff later testified, via a "declaration" in opposition to the Defendants' motion for summary judgment, that Ofc. Krause punched or hit him in the head "several times" when Plaintiff was on his feet and that Ofc. Bach "got over [him] and dropped a few knees into [Plaintiff's] back and ribs. [Decl. Larkin 1, ECF 90-1].

Despite these claims, the Court, in its May 19, 2021, Order on summary judgment, held that Ofc. Krause's use of force was not excessive because: (1) "Larkin still posed a danger to the officers," citing, *McCottrell v. White,* 933 F.3d. 651, 663 (7th Cir. 2019); (2) "the officers had already tried to limit the force they needed to use against Larkin, using repeated verbal orders and pepper spray before resorting to physical confrontation;" and (3) "Larkin presented no evidence of injury caused by Krause." [ECF 95, at 7]. Similarly, the Court previously held that summary judgment was appropriate for Ofc. Bach because "there is no allegation of significant injury to… [Larkin's] back or ribs." [ECF 95, at 8]. Finally, as with the other former defendants, the Court also held that Plaintiff, "has not presented evidence showing that the officers, including Ofc. Krause and/or Ofc. Bach, had a 'realistic opportunity' to stop Talbot from slamming [Plaintiff's] head into the ground" and granted summary judgment on those claims as well. [ECF 95, at 10-11].

Therefore, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that:

6

(1) former defendants Krause and/or Bach were once defendants to this case; (2) they somehow caused or contributed to his alleged constitutional injury; (3) they failed to intervene against any alleged unconstitutional behavior; or (4) Plaintiff sustained any injuries to the left side of his head, his back, or his ribs. *Keller v. Trefz,* 66 F. App'x 44, 46 (7th Cir. 2003 (finding a prisoner's "allegations of serious injury [un]substantiated by medical records" did not preclude summary judgment on excessive force); *Bennett v. Sobek,* 336 F. Supp. 3d 933, 939-940 (E.D. Wis. 2018).

7. *Any reference to the fact that Sgt. Calvin Bradford was once a defendant in this case.*

Like with the other former defendants, Plaintiff also alleged that Sgt. Calvin Bradford was one of the correctional officers who "beat [him] in the head, face, and body," that he was punched and kicked, and that one of the correctional officers grabbed him by the head/hair and slammed his "face/head onto the floor continuously." [ECF 1, at ¶¶31-33]. Plaintiff also generically alleged that Sgt. Bradford either failed to intervene or actively engaged in behavior that violated his Eighth Amendment rights. [ECF 1, at ¶47]. Plaintiff later testified, via a "declaration" in opposition to the Defendants' motion for summary judgment, that Sgt. Bradford, "got over [him] and started punching [Plaintiff] in the left side of [Plaintiff's] head and face with his left gloved hand…15-30 times." [Decl. Larkin 1, ECF 90-1].

Despite these claims, the Court, in its May 19, 2021, Order on summary judgment, held that Sgt. Bradford's actions were not excessive because, "there is no allegation of significant injury to the left side of Larkin's head (the side where Bradford allegedly punched him 15 to 30 times)…." [ECF 95, at 8]. The Court also held that Plaintiff, "has not presented evidence showing that the officers, including Sgt. Bradford, had a 'realistic opportunity' to stop Talbot from slamming [Plaintiff's] head into the ground" and granted summary judgment on those claims as well. [ECF 95, at 10-11].

Given these earlier findings, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that: (1) Sgt. Bradford was once a defendant to this case; (2) Sgt. Bradford caused or contributed to cause any injuries to the left side of Plaintiff's head; or (3) Sgt. Bradford failed to intervene against any alleged unconstitutional behavior.

**8.** ***Any testimony or other insinuation that Plaintiff did not resist the cell extraction or the cell extraction team.***

It is anticipated that Plaintiff will testify that "he never threw one punch or kick," that he did not actively resist the cell extraction team members, and/or that he did not physically attack or resist the cell extraction team members during the cell extraction on April 10, 2018. However, Plaintiff is precluded from testifying in such a manner or from raising such arguments because he was found guilty of two different conduct disciplinary violations associated with the events from April 10, 2018.

First, Plaintiff received a Conduct Report from Ofc. Alex McGowan, for battery against an officer, when Plaintiff threw an unknown liquid at Ofc. McGowan, striking him in the chest area of his vest on April 10, 2018, prior to the cell extraction incident. While the substance was later confirmed to be water, on April 24, 2018, Plaintiff was nonetheless convicted of Disciplinary Code violation 102, which resulted in a loss of privileges, a loss of earned credit time, and a demotion of his credit class. This conviction has not been set aside.

Second, Plaintiff received a second conduct report from the events on April 10, 2018, this time from Ofc. Andrew Krause. Officer Krause completed a Conduct Report wherein he alleged battery against Plaintiff when he was attempting to secure Plaintiff's leg and was "kicked by Offender Larkin [which] caused immediate severe pain in [his] right hand during the cell extraction." As a result of this Conduct Report, Plaintiff was again convicted of Disciplinary Code violation 102, which also resulted in a loss of privileges, lost earned credit time, and a demotion

of his credit class. This conviction has also not been set aside.

Pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a civil claim that necessarily implies the invalidity of an outstanding conviction must be dismissed without prejudice because the claim does not accrue until the conviction has been set aside. *Johnson v. Rogers,* 944 F.3d 966, 968 (7th Cir. 2019). This rule applies with equal force to prison disciplinary convictions, like the ones here. *Edwards v. Balisok,* 520 U.S. 641 (1997).

Here, Plaintiff may not testify or take the position that he was not physically resisting the cell extraction team, that he did not kick or batter any members of the cell extraction team, or that he did not engage in any behavior that led to the cell extraction on April 10, 2018, because he has been convicted on two separate disciplinary violations for battery, which would be contradicted if he were allowed to testify as such. Simply put, while Plaintiff's claim of excessive force is properly before this Court, any testimony or evidence offered by Plaintiff that would "necessarily imply the invalidity of his conviction(s)" of battery cannot be advanced by Plaintiff at trial. *See, Tolliver v. City of Chicago,* 820 F.3d 237, 244 (7th Cir. 2016). As such, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that: (1) he was not physically resisting the cell extraction team; (2) he did not kick or batter any members of the cell extraction team; or (3) he did not engage in any behavior that led to the cell extraction on April 10, 2018.

9. ***Any claim(s) by Plaintiff that the Defendant(s) or the Indiana Department of Correction have withheld or destroyed any video images or audio recordings of the events alleged on April 10, 2018.***

In the course of this litigation, Plaintiff requested, and the Defendant(s) produced, a redacted video of the cell extraction events, as well as a video from the taser of one of the officers. [ECF 73-1]. As a part of this production, the Defendant(s) advised Plaintiff that, "[t]he video taken on the hand held camera cuts off before the cell extraction took place, because the SD card ran out

9

of memory. Please be advised that 1:54 to 3:16 of the original video has been removed for facility

safety and security, because the confidential cell extraction protocol (see redacted document

labelled IDOC000024) is read aloud during those 81 seconds." [ECF 72, at 2]. These are the only

video images/recordings in possession of the Defendant(s) regarding the April 10, 2018, cell

extraction. Moreover, the lack of SD card memory was not identified until shortly after the cell

extraction took place – meaning that there was no other or additional SD card to be found or which

could contain additional footage of the cell extraction on April 10, 2018, and this has been the case

since only minutes after the cell extraction took place on April 10, 2018.

Throughout this litigation, Plaintiff has referenced the video footage, including in his

response in opposition to the Defendants' motion for summary judgment, to either claim that the

Defendant(s) were lying, or to show that he was not physically resisting, or to claim that the

"missing" video precluded summary judgment. [ECF 90]. Nonetheless, there is no additional or

"missing" video and there never has been. Moreover, to the extent that Plaintiff wanted an

unredacted version of the produced extraction video, he never pursued its production or tried to

compel its production. Notably, Defendant Talbot continues to assert that the production of the

unredacted version of the video should be withheld due to the possible nature of the security threats

to the facility if the cell extraction process and protocol was provided to a still-incarcerated

Plaintiff.

Moreover, spoliation is not an issue in this case, and there exists no evidence that Defendant

Talbot or any other former defendant or even the IDOC has wrongfully withheld or destroyed

video images of the cell extraction incident with Plaintiff, or that there are somehow other "views"

of the alleged incident that were not provided to him. It is nevertheless expected that Plaintiff will

attempt to argue that if only Defendant Talbot, or IDOC, or their attorneys, had produced these

non-existent "other views" or images, they would substantiate his claims of being beaten, his head being "slammed" on the ground, him not physically resisting the cell extraction team, and that all of the events in question happened as he claims, without any of the former defendants intervening to stop it.

It would be most prejudicial to Defendant Talbot were Plaintiff allowed to suggest to the jury that Defendant Talbot committed the acts he ascribes to him and that Defendant Talbot is trying to cover it up by withholding or destroying film imagery that, had it been produced, would have shown that he engaged in the behavior as Plaintiff alleges. This would hardly be the first time an inmate plaintiff has claimed– absent any substantiating evidence– that video footage would prove his case if only the correctional facility had not suppressed or destroyed it. In *Sinn v. Brush*, 2019 WL 4688724 (S.D.Ind. Sept. 26, 2019), defendants filed a motion *in limine* to exclude "any argument, questions, testimony, or evidence suggesting spoliation of video footage from Putnamville Correctional Facility" on the date of the alleged incident. In its order granting defendants' motion, the district court noted that "[t]he fact that certain areas of the Putnamville Correctional Facility are not captured by footage offered in this case does not mean that footage does not exist, or that it never existed," but "there is no allegation that Brush or any IDOC employee improperly destroyed footage or failed to preserve footage, and it would be improper to insinuate to a jury that other footage existed that bolsters either party's version of the facts." *Id*. at *5.

So too here. Given the absence of any evidence of spoliation of camera footage, it would be highly prejudicial for Plaintiff to suggest to the jury that such evidence existed; that it showed all of the wrongdoing Plaintiff claims occurred in this matter or that it showed Plaintiff not resisting the cell extraction team efforts; and that Defendant Talbot or his employer (IDOC) therefore

withheld or destroyed such imaging. Any such argument, questions, testimony, or evidence suggesting that: (a) additional video footage existed or does exist; (b) substantiating Plaintiff's account of event; (c) that was or is being withheld or has been destroyed by Defendant Talbot or his employer, the IDOC, or by Defendant Talbot's attorneys, or by any staff member or employee of the Westville Correctional Facility, should be barred by an order *in limine.*

**10.** *Any reference to other injuries that rise to the level of an actionable constitutional violation.*

Over the course of litigation, Plaintiff has alleged various injuries, including, but not limited to, those stemming from the use of pepper or O.C. spray, smaller scratches, cuts, or abrasions to his face, injuries to his back, ribs, and/or left side of his head, a cut to his right eyebrow, and other physical and/or emotional damages stemming from the cell extraction incident on April 10, 2018, and/or the subsequent "retaliation" of a "strip cell." [ECF 1, at ¶¶30-50; Decl. Larkin 1, ECF 90-1]. However, following the summary judgment Order, only one injury remains at issue – the cut above Mr. Larkin's right eyebrow, which required stitches. [ECF 95, at 9, 11].

The remaining allegations and injuries have since been disposed of by the Court either through the May 6, 2021, Screening Order or the May 19, 2021, Order on summary judgment. In particular, in its May 19, 2021, Order, the Court specifically found that the "several smaller cuts or abrasions on [Plaintiff's] face, which did not appear to be bleeding" were insufficient to sustain an Eighth Amendment claim, as they were caused by the use of *de minimus,* rather than excessive force. [ECF 95, at 7 n.6]. Therefore, Plaintiff should not be allowed to claim, raise, or refer in trial or *voir dire* that he sustained any actionable injuries as a result of the April 10, 2018, cell extraction, other than the cut above his right eyebrow.

11. *Any opinion testimony in the form of self-diagnosis or causal relationships between Defendant Talbot's alleged conduct and Mr. Larkin's prior medical conditions and those which developed thereafter.*

Although Fed. R. Evid. 701 allows a lay witness to testify regarding symptoms of a medical condition, such a witness may not give an opinion regarding medical diagnoses, prognoses, conclusions, or medical opinions in general. *See McQuiston v. Helms*, 2009 WL 554101, at *11 (S.D. Ind. Mar. 4, 2009)("[The Plaintiff] cannot opine on medical causation or the impact of [the doctor's] medical diagnosis on his ability to work in the future because those opinions would necessarily have to be "based on scientific, technical, or other specialized knowledge," pursuant to Rule 701). Plaintiff – and any other lay witness – lacks the knowledge, skill, experience, training, and education that would qualify them to testify as to the nature of an underlying medical condition, cause, or its permanency as a result of the incident. *See*, *e.g.*, *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (finding inmate incompetent to testify in his conditions-of-confinement case that there is a causal relationship between exercise and healthy gums); *Crawford v. Davis*, 597 F.Supp.3d 1243, 1245-46 (S.D. Ill. 2022) (motion in limine granted precluding inmate plaintiff from testifying that contaminated standing water in the showers caused his feet to develop fungal infection and precluding co-plaintiff from testifying that fall caused concussion or caused him to urinate blood for two days). Moreover, this testimony could serve only to prejudice, confuse, and mislead the jury. Fed. R. Evid. 403, 701.

Here, it is unknown whether Plaintiff will seek to claim that any injury to his right eyebrow is "permanent," that its healing or his general recovery was fraught with complications or improper healing, that there were other injuries which were sustained because of Defendant Talbot's alleged conduct, or that the injury to his right eyebrow caused or led to other alleged injuries as time progressed. Regardless, Plaintiff has not identified any expert witnesses who could testify to the

permanency, if any, of his alleged injury, nor has he identified any such opinions from treating physicians or health professionals. Thus, while Plaintiff can speak to matters rationally based on his perception, *e.g.*, a description of his injury or pain related thereto, he cannot discuss the nature and extent of the damage, the permanency of such injury, or other matters reserved to the opinion of a medical professional. *McQuiston*, 2009 WL 554101 at *11; *see also Marvin v. Holcomb*, 2022 WL 18956480, at *4 (N.D. Ind. Sept. 8, 2022).

Additionally, it is anticipated that Plaintiff may seek to testify that he was under a "manic" trance or episode, or that he was experiencing some other type of mental health condition which led to and/or justified his behavior on April 10, 2018, before, during, and after the cell extraction involving Defendant Talbot. Nonetheless, not only do the contemporaneous medical records indicate that it was the clinical opinion of mental health professionals that Plaintiff's "mental health state was not a factor in his alleged misconduct," [ECF 72, at 197] but, again, Plaintiff has not offered or identified any medical professionals who could testify as to his mental health status or why it was a factor in his behavior on April 10, 2018. Because such testimony may be offered only by a properly disclosed expert witness, and Plaintiff has identified no such individual, Plaintiff should be barred from testifying personally as to these issues. *See* Fed. R. Evid. 701, 701; *Taylor v. N.E. Illinois Reg'l Commuter R.R. Corp.*, No. 04 C 7270, 2008 WL 244303, at *5 (N.D. Ill. Jan. 28, 2008).

**12.** *Any reference offers of settlement in this case.*

Rule 408 of the Federal Rules of Evidence prohibits the admission into evidence of the fact of an offer or promise to compromise, or statements made during a settlement negotiation. Fed. R. Evid. 408. Its purpose is "to encourage litigants to engage in settlement discussions without fear that what they say will return to haunt them" in the form of tacit admissions of liability. *See VanGilder v. Baker,* 2008 WL 2225647, at *4 (N.D. Ind. May 27, 2008).

14

Evidence of settlement negotiations and/or offers of compromise are simply not material to the issues in this case and would serve no purpose other than to improperly persuade the jury and prejudice Defendant Talbot. Fed. R. Evid. 401, 402, 408; *Van Gilder*, *supra*; *see also Stewart v. Jackson*, 2021 WL 1660976, at \*3 (N.D.Ind. Apr. 28, 2021). No reference to any settlement offer, or any statements made during the course of settlement discussions, should be permitted by the Court, and an order *in limine* should bar the same

**13. *Evidence related to alleged "prior bad acts" by Defendant Talbot.***

This action is based on Plaintiff's claim that Defendant Talbot used excessive force during a cell extraction wherein Plaintiff claims that, after he was subdued, Talbot "grab[b]ed [him] by [his] head and hair and slam[m]ed [his] face and head into the floor split[t]ing [his] right eyebrow open and pulling out [his] hair." [Decl. Larkin 1, ECF 90-1]. Defendant Talbot requests that an *in limine* order be issued to foreclose any suggestion that Defendant Talbot was involved in "prior bad acts" of any kind, pursuant to Fed. R. Evid. 404(b); and this order should extend to any comment or claim that officers of IDOC generally or frequently use excessive force, especially during cell extractions.

As the Court is aware, evidence of a prior wrongful act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see Brooks v. Solis*, 2017 WL 2908767, at \*5 (N.D. Ill. July 7, 2017). Because there are no prior acts involving excessive force, no reference to any other unspecified misdeeds—whether addressed to Defendant Talbot, the other former defendants, or IDOC in general—should be allowed. Even "[i]n those exceptional cases where evidence of other acts is admitted, there must be a strong factual similarity between the prior acts and the misconduct alleged in the case at trial." *Brooks*, *supra*. Nothing like that exists here.

Additionally, while Plaintiff initially pleaded allegations against former Defendants Sevier

and Cornett for their failure to take disciplinary action against Defendant Talbot and other former

defendants, for the "number of complaints and grievances over many months and years," these

claims were dismissed by the Court's screening order of May 6, 2019. [ECF 11, at 5]. Finally,

"[e]vidence of other unrelated disciplinary actions is not admissible by either party to show that

[Defendant Talbot] acted in conformity with his character ... regardless of whether [Defendant

Talbot] "opens the door" to the use of such evidence. *VanGilder*, *supra*. Thus, an order *in limine*

is requested to foreclose reference to this subject matter.

14. ***Barring Plaintiff from offering evidence or testimony concerning violations of IDOC internal guidelines, policies, procedures, administrative directives, or rules as evidence of a constitutional violation.***

   Plaintiff should be barred from offering testimony or evidence to establish that Defendant

Talbot violated IDOC's guidelines, policies, procedures, etc., which would be irrelevant to proving

that Defendant Talbot used excessive force during the April 10, 2018, cell extraction. *See*

*Thompson v. City of Chicago*, 472 F.3d 444, 446 (7th Cir. 2006); *see also Whren v. United States*,

517 U.S. 806, 815 (1996) (holding police manuals, guidelines, or general orders are not reliable

gauges of what is reasonable under the Constitution); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th

Cir. 2003). Accordingly, any evidence or testimony pertaining to any allegations that Defendant

Talbot failed to abide by any IDOC procedures should be barred, as it is immaterial to the

Plaintiff's claim for constitutional violations and significantly more prejudicial than probative.

Fed. R. Evid. 403.

15. ***"Golden Rule/Stand in Plaintiff's Shoes" Arguments.***

   "A 'Golden Rule' appeal in which the jury is asked to put itself in Plaintiff's position "is

universally recognized as improper because it encourages the jury to depart from neutrality and to

decide the case on the basis of personal interest and bias rather than on the evidence." *Spray-Rite*

*Service Corp. v. Monsanto Co.*, 682 F.2d 1226, 1246 (7th Cir. 1982); *see United States v. Roman*,

492 F.3d 803, 805-06 (7th Cir. 2007). Plaintiff should be foreclosed from making any such argument to the jury. *See Scott v. Menard, Inc.*, 2:10-cv-442, 2015 WL 4603218, at *3 (N.D. Ind. July 30, 2015); *Kelham v. CSX Transportation, Inc.*, 2:12-cv-316, 2015 WL 4426114, at *2 (N.D. Ind. July 20, 2015); *Jenkinson v. Norfolk Southern Ry. Co.*, No. 1:15-cv-824-TWP-MPB, 2017 WL 1393086, at *7 (S.D. Ind. Apr. 17, 2017); *Spreckelmeyer v. Indiana State Police Department*, No. 1:15-cv-912-TWP-DML, 2017 WL 111596, at *5 (S.D. Ind. Jan. 11, 2017).

### 16. *"Justice delayed is justice denied" and "waiting for his day in court" arguments.*

It is anticipated that Plaintiff may attempt to appeal to juror sympathy by suggesting that he has waited a long time "for his day in court" or that his ability to have his case heard has been unfairly delayed. Mention of, and specifically criticism of, the course and length of time of this litigation should not be permitted because either subject would be irrelevant and prejudicial. Therefore, any evidence of the same should be excluded under Fed. R. Evid 401 and 402.

Even if deemed relevant, reference to the time a litigant waits for resolution of a cause should not be allowed because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Appeals to award monetary damages solely because someone "had to wait a long while" is prejudicial, and an improper attempt to persuade jurors on an illegitimate basis unrelated to the merits of the case. As a result, it should be barred at trial and/or *voir dire*.

### 17. *Any previously non-disclosed trial witnesses.*

In discovery, Defendant Talbot requested Plaintiff to, "Identify all witnesses You or Your attorney intend to call at the trial of this matter or for any hearing. For each witness, please provide a summary of the facts to which the witness is expected to testify." [ECF 65, at 10]. Plaintiff responded with,

John Salyer I feel he will tell the facts in how Defendants used excessive force that

17

> I was in fact beat. Dr. Jackson that my condition was above and beyond what it
> should have been. Nurse Hutchinson that it would have taken excessive force for
> me to be beat so bad. I want all defendants [to] tell their story. Ms. Boren? Aaron
> Isby Israel tell what he heard an[d] seen (sic). I'm sure more when we get more
> paperwork.

[ECF 86-5, at 9]. As such, Plaintiff has identified only the following witnesses and the expected

testimony that he may use at trial: (1) John Salyer – to testify about how Defendant Talbot

allegedly used excessive force; (2) Dr. James Jackson – to testify about Plaintiff's "condition;" (3)

Nurse Hutchinson – to testify about the alleged use of excessive force; (4) the named defendant(s)

– to "tell their story;" (5) Ms. Michelle Boren – testimony unknown; and (6) Aaron Isby Israel –

to testify about what he heard and saw on April 10, 2018. This Interrogatory answer has not been

supplemented, amended, or revised since it was originally served by Plaintiff on or about June 5,

2020. [ECF 86-5, at 1, 4].

Despite this answer, Plaintiff has now identified approximately 33 different possible trial

witnesses. [*See,* Proposed Pre-Trial Order, ECF *pending*]. Because Defendant Talbot relied on

Plaintiff's earlier representation as to potential trial witnesses when conducting his own discovery

and deposition(s), he now objects to any witnesses and/or testimony that were not previously

disclosed by Plaintiff. As such, Defendant Talbot specifically objects to the following individuals,

identified as Plaintiff's possible trial witnesses in the proposed Pre-Trial Order: (1) James Bowen;

(2) Alex McGowan; (3) Corey McKinney; (4) Gary Lewis; (5) Thomas Carter; (6) Jason Knocke;

(7) Trevor Spiegel; (8) Richard S. Usdowski, MHP; (9) William G. Hanson, RN; (10) Barbara

Eichman, M.D.; (11) Janice C. West, LPN; (12) Jody Kupferberg, NP; (13) Jeanine A. Monnier,

RN; (14) Susan E. Downing, LPN; (15) Jewell A. Kleege, MHP; (16) Sharon Hert; (17) Darren

Bailey; and (18) Merle Webb. These individuals were not previously defendants, nor were they

previously identified by Plaintiff as a possible trial witness.

18

**18.** *Any previously non-disclosed trial exhibits.*

In discovery, Defendant Talbot also requested Plaintiff to, "identify and describe each and every exhibit that You or Your attorney intend to present at trial, including, but not limited to, documents, photos, videos, diagrams, and charts." [ECF 65, at 11]. Plaintiff responded with,

> First thing will be the video. My case was on video. The Asst. part of it was anyway. It will show me held down and beat with me unable to do anything to stop it an[d] the ones watching doing nothing to stop it. I've got a Report of Conduct that will show lies. Photos of me after the Asst. my condition, medical documents, Request forms of me [trying] to get all this. I plan to depose all listed in Interrogatory No. 7 an[d] more as [it's] provided to me.

[ECF 86-5, at 10]. Defendant Talbot also served a Request for Production on Plaintiff seeking, "Please produce all exhibits you intend to introduce or rely upon during the trial of this matter." [ECF 64, at 7]. Plaintiff responded on or about June 23, 2020, with simply "N/A" as a response to this request. Thus, Plaintiff has identified only the following exhibits, or categories of exhibits that he may use at trial: (1) extraction video(s); (2) Report(s) of Conduct; (3) photographs of himself after the cell extraction; (4) medical documents; (5) Request forms; and (6) possible deposition transcripts. This Interrogatory answer has not been supplemented, amended, or revised since it was originally served by Plaintiff on or about June 5, 2020. [ECF 86-5, at 1, 4].

Despite this answer, Plaintiff has now identified approximately 110 different possible exhibits to be used at trial. [*See,* Proposed Pre-Trial Order, ECF *pending*]. Because Defendant Talbot relied on Plaintiff's earlier representation as to potential trial exhibits when conducting his own discovery and deposition(s), he now objects to any exhibits or categories of exhibits that were not previously disclosed by Plaintiff. As such, Defendant Talbot specifically objects to the inclusion of the exhibits identified as Plaintiff's possible trial exhibits, #54 through #84, inclusive, in the proposed Pre-Trial Order, as they were not previously identified by Plaintiff as being potential trial exhibits.

**19.** *This motion and any order entered thereon.*

Plaintiff should be prohibited from making any mention of this motion, or any of the Court's rulings in response to this motion, or otherwise suggesting to the jury that Defendant has moved to prohibit proof of something or that the Court has excluded proof of any particular matter. *Miller v. Polaris Laboratories, LLC*, 2016 WL 1639087, at *6 (S.D. Ind. Apr. 26, 2016) ("referring to the Motions in *Limine* to raise a suspicion with the jury that the opposing party is trying to hide something from the jury is unfairly prejudicial and inappropriate."). Should issues arise concerning the parties' adherence to the Court's orders *in limine*, they should be addressed to the Court outside the presence and hearing of the jury.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By:  /s/ *Alan M. Kus*
　　　David J. Beach, #18531-45
　　　Alan M. Kus, #31388-45
　　　Attorneys for Defendant, Geoffrey Talbot

**EICHHORN & EICHHORN, LLP**
2929 Carlson Dr., Suite 100
Hammond, IN 46323
Telephone: (219)-931-0560
Facsimile: (219)-931-5370
E-mail:  dbeach@eichhorn-law.com
　　　　akus@eichhorn-law.com

**CERTIFICATE OF SERVICE**

I, Alan M. Kus, certify that on October 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the Case Management / Electronic Case Filing (CM / ECF) system maintained by the United States District Court for the Northern District of Indiana.

/s/  *Alan M. Kus*
Alan M. Kus