UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES LARKIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 4:18-CV-65 |
| v. | ) |
| | ) HON. THERESA L. SPRINGMAN |
| GEOFFREY TALBOT, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT TALBOT'S RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE***

Pursuant to the Court's Order [ECF 123], Defendant, Geoffrey Talbot, by counsel, Eichhorn & Eichhorn, LLP, hereby responds to the Motions *in limine* filed by Plaintiff, James Larkin, as follows:

### I.   Plaintiff's Motion *in Limine* No. 1 – Barring Prior Bad Acts.

Defendant Talbot objects to this motion *in limine* to the extent that it seeks to limit or prevent him from impeaching Plaintiff pursuant to Fed. R. Evid. 608 or 609, introducing evidence of Mr. Larkin's felony convictions, and/or to the extent that it seeks to prevent him from introducing evidence about the threat(s) he reasonably perceived the need for, and amount of force used, and other underlying facts surrounding Mr. Larkin's cell extraction on April 10, 2018. While Plaintiff correctly notes that Fed. R. Evid. 404, *et seq.* generally does not allow evidence of prior bad acts to prove that on a particular occasion the person acted in accordance with the character or trait, he does not follow Fed. R. Evid. 404(a)(3), 404(b)(2), 607, 608, and 609, which all provide exceptions to the general rule.

Here, Plaintiff has been convicted of the following felonies: (1) criminal confinement (Ind. Code §35-42-3-3); (2) attempted/robbery (armed or bodily injury) (Ind. Code §35-41-5-1); (3) robbery (serious bodily injury) (Ind. Code §35-42-5-1); and (4) battery (Ind. Code §35-42-2-1). Each of these convictions was for a felony which was punishable by imprisonment for more than one year. Pursuant to Fed. R. Evid. 609(a)(1)(A), evidence of these convictions "must be admitted, subject to Rule 403, in a civil case…in which the witness is not a defendant." Furthermore, Fed. R. Evid. 609(b) does not apply, as Plaintiff remains incarcerated for these convictions, rendering the ten-year limitation inapplicable. Fed. R. Evid. 609(b) ("This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later...."). Furthermore, Plaintiff was previously convicted of a staff assault prior to the April 10, 2018, events, as well as two additional convictions for assaulting staff members in connection with the events of April 10, 2018.

Importantly, all the aforementioned acts resulted in convictions, not mere arrests, accusations, or charges. As such, Plaintiff's reliance on *Barber v. City of Chicago,* 725 F.3d 702 (7th Cir. 2013) is misplaced, as *Barber* focused on prior arrests, accusations, or charges – not convictions. *Barber*, 725 F.3d at 709 (contrasting prior arrests or charges with prior convictions). Thus, while there is an obvious need to prevent a situation wherein the Defendant merely "harp[s] on the plaintiff's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue to the plaintiff's conviction in a prior case," Plaintiff's prior convictions may be used to attack his character for truthfulness, subject to Fed. R. Evid. 403. *See, Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990).

Furthermore, Defendant Talbot objects to any bar in presenting Plaintiff's criminal convictions or prison disciplinary history/convictions to the jury as Plaintiff's convictions, especially the conviction for assaulting a guard, are directly relevant to a jury's ability to analyze whether Defendant Talbot applied force in good faith to resolve a disturbance or, rather, maliciously with intent to cause harm. This is because the determination turns on factors including the threat reasonably perceived by Defendant Talbot, the need for and amount of force used, any efforts made to temper the severity of the force used, and the injury allegedly suffered by Plaintiff. *Boyd v. Pollard*, 621 F. App'x 352, 355 (7th Cir. 2015); *see also, Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Given Plaintiff's previous history of violence, especially towards correctional staff, the jury should be allowed to learn about Plaintiff's prior convictions; not necessarily to prove that Plaintiff acted in accordance with those earlier convictions, but rather, to demonstrate the threat perceived by Defendant Talbot, the need for the amount of force used, and the efforts made to temper the severity of the force used.

Ultimately, Plaintiff's prior convictions should be allowed to be presented to the jury, subject to Rule 403, because: (1) they are convictions which were punishable by imprisonment for more than one year; (2) they are proper impeachment evidence and/or evidence to attack Plaintiff's character for truthfulness; and (3) they are more probative than prejudicial on the highly relevant topic of Defendant Talbot's perception of the threat posed by Plaintiff and the amount of forced used to address that threat. Therefore, Plaintiff's motion *in limine* No. 1 should be denied.

### II. Plaintiff's Motion *in Limine* No. 2 – Barring Plaintiff's Grievance Filed with the Prison.

Defendant Talbot objects to this motion *in limine*, especially to the extent that the grievance written by Plaintiff, shortly after the alleged incident, contains information or statements by the Plaintiff which he has since contradicted or modified in other testimony, which should at least be

3

allowed for impeachment purposes. For instance, Plaintiff's initial grievance filing did not mention or reference Defendant Talbot. Plaintiff's grievance documents also include a handwritten comment by the Plaintiff stating, "…after I was down an[d] subdued…one officer (don't know who I was face down) grabs me by my head/hair smacking my head and face into the concrete splitting/cutting open the upper edge of my right eye lid which required stitches." Plaintiff's grievance paperwork was completed, signed, and dated by him prior to being submitted each time.

Since writing and filing his grievance(s), Plaintiff has seemingly had a change of opinion, as he now attributes his injuries and the alleged slamming of his head into the concrete to Defendant Talbot. As such, Plaintiff's grievance paperwork at least represents either a potential prior inconsistent statement by Plaintiff, under Fed. R. Evid. 613, or a prior statement by a party opponent, under Fed. R. Evid. 801(d)(2). "There are only two requirements for admissibility under FRE 801(d)(2)(A): a statement was made by the party, and the statement was offered against the party." *Jordan v. Binns*, 712 F.3d 1123, 1128-29 (7th Cir. 2013). Both requirements are met here.

Finally, certain business records are admissible under Fed. R. Evid. 803(6). A grievance, and the response thereto, could qualify for that exception. *Atkinson v. Mackinnon*, 2016 WL 4082742, at *2 (W.D. Wis. July 29, 2016). Therefore, because there are multiple avenues for the admission and/or use of Plaintiff's grievance, Plaintiff's motion *in limine* No. 2 should be denied.

### III.    Plaintiff's Motion *in Limine* No. 3 – Barring Evidence Pertaining to Gang Affiliation.

Defendant Talbot does not intend on questioning Plaintiff about any gang affiliation(s) or his tattoos. However, he reserves the right to explore both topics of inquiry if Plaintiff opens the door to such testimony.

4

IV. **Plaintiff's Motion *in Limine* No. 4 – To Bar Reference to Claims No Longer in the Case and to Former Defendants.**

Defendant Talbot has no objection to this motion *in limine* to the extent that it only seeks to bar references to the previously dismissed or adjudicated claims against the former defendants or to the extent that it prevents both parties from referring to individuals as "former defendant" or something similar thereto. Indeed, Defendant Talbot has filed several of his own motions *in limine* requesting the same relief and ruling from the Court. *See, Defendant's motions in limine #s 2-7*. [ECF 133, at 2-8].

However, if Plaintiff's motion seeks to bar the former defendants from testifying, in general, or if it seeks to bar references to the former defendants by name or their involvement in the cell extraction, Defendant Talbot objects to this motion for being overly broad and incompatible with the facts and circumstances of this case. Clearly, the central issue in this lawsuit is whether Defendant Talbot used excessive force against Plaintiff during the cell extraction on April 10, 2018. Nonetheless, Defendant Talbot did not perform the cell extraction alone. As such, he should be allowed to call other members of the cell extraction team – most of which were previous defendants in this lawsuit themselves – as witnesses at trial to testify about their involvement and observations during the cell extraction, as well as any reports or documents that were prepared in connection with the cell extraction.

Additionally, Defendant Talbot agrees that the excessive force claims against the former defendants are not currently before the Court or jury. Thus, Plaintiff's claimed injuries to his back, ribs, and left side of his head should not be alleged by Plaintiff or attributed to Defendant Talbot at trial. Instead, the only issue and injury pending in this case, by Plaintiff's own statements and admissions, is whether Defendant Talbot used excessive force by allegedly grabbing Plaintiff by the head and hair and slamming his face and head into the floor, splitting his right eyebrow open

and pulling out Plaintiff's hair, after Plaintiff had been subdued. [ECF 95, at 9-10].

Nonetheless, at trial, it is Plaintiff's burden to show that Defendant Talbot, personally, engaged in a malicious or sadistic use of force to cause harm to him. Inherent in any defense against these claims is the ability to contest whether the force applied was in good faith to maintain or restore discipline, the timing and nature of the force used, and whether the force used caused the harm alleged by the prisoner. Here, there were multiple individuals involved in the cell extraction event, who each interacted with Plaintiff at various times and using various degrees of force. While Plaintiff attributes the injury to his right eyebrow solely to Defendant Talbot, there are multiple other potential explanations or causes to the injury to Plaintiff's right eyebrow, including but not limited to, Officer Krause's actions while Plaintiff was fighting against the extraction, Sgt. Bradford's actions when he entered Plaintiff's cell with the safety shield, and even Defendant Talbot's actions prior to Plaintiff being subdued.

While Plaintiff is concerned about the defense being "allowed to try an empty chair" by possibly "pointing the finger" at the prior defendants, he has only himself to blame for this by attributing his only remaining injury solely to Defendant Talbot's actions. Simply because many of the former defendants have been granted summary judgment does not preclude Defendant Talbot from attributing the cause of Plaintiff's injury to one of them, especially as the existence of an injury does not automatically equate to a finding of excessive force. *See, e.g. Whitley v. Albers,* 475 U.S. 312 (1986) (the shooting of a prisoner during quelling of a riot without prior verbal warning did not violate the Eighth Amendment).

Importantly, Defendant Talbot does not intend to claim that any of the prior defendants engaged in excessive force at trial. Rather, he maintains that the cell extraction team, including himself, utilized the appropriate amount of force to restore discipline in the face of a recalcitrant

and violent inmate, who refused to comply with verbal orders, even after the use of pepper spray, and that Plaintiff's eyebrow injury occurred during the reasonable use of force. As a part of this, Defendant Talbot should be allowed to contest the timing and cause of Plaintiff's alleged injury, including the fact that it was not caused by him and/or that it occurred prior to Plaintiff being subdued. This will necessarily involve references, and likely testimony, about the actions of the cell extraction team, many of whom were former defendants themselves.

As such, while Defendant Talbot does not intend to refer to any member of the cell extraction team as a "former defendant" or eliciting testimony about what a former defendant was accused of by Plaintiff in the past, he should be allowed to have those individuals testify and to fully contest Plaintiff's claims against him. Thus, Plaintiff's motion *in limine* No. 4, as currently written, should be denied, at least in part.

**V.    Plaintiff's Motion *in Limine* No. 5 – Barring Testimony about Defendant or Officer Prior Commendations, Awards, or Positive Employment History.**

Defendant Talbot objects to this motion *in limine* to the extent that it can be interpreted to bar any testimony about Defendant Talbot's prior training as a member of a cell extraction team and/or to the extent that it prevents Defendant Talbot from referencing or mentioning that he has since been promoted to the rank of Lieutenant at the Westville Correctional Facility. Such testimony or reference(s) are not intended to circumvent Fed. R. Evid. 404(a), but instead reflect his current training and/or position and rank at the facility. Without more, this type of testimony or reference by witnesses is not prejudicial to Plaintiff, as it would merely reflect the accurate reality that Defendant Talbot is now a Lieutenant.

Defendant Talbot also objects to any bar on testimony or evidence of his prior training and experience as a member of cell extraction teams. This prior training and/or experience is relevant to the jury's analysis of the factors underlying any excessive use of force case, specifically

7

including the threat perceived by Defendant Talbot, the efforts made to temper the severity of the force employed, and the relationship between the amount of force needed and the amount of force applied.

In his deposition, Plaintiff suggested, on a number of occasions, that the cell extraction team deviated from the "proper procedure" prior to, during, and/or after the cell extraction event, including that a conduct report or that calling a mental health professional prior to the extraction would have been the "proper procedure." [ECF 86-1, p.14, ll.6-12; ECF 86-1, p. 16, ll. 11-17].[1] Plaintiff also described the cell extraction events as "a beating" and "a gang style jumping." [ECF 86-1, p. 14, ll. 11-12].

While that may be Plaintiff's interpretation of the events that transpired as a part of the cell extraction event, Defendant Talbot should be able to testify as to his training and experience with cell extractions to counter these anticipated comments or arguments by Plaintiff and to further provide insight as to his perceptions and rationale for his actions as a part in extracting Plaintiff from his cell on April 10, 2018. As the Court has previously held, prison officials are afforded, "wide-ranging deference in the adoption and execution of policies and practices…to preserve internal order and discipline." [ECF 95, at 6] (citing, *Whitley,* 475 U.S. at 321-22 (1986)). As such, Defendant Talbot's history, training, and/or knowledge of those policies and practices, and how they are implemented in real-time, are highly relevant to the underlying question of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Because this type of testimony is not meant to "suggest that Defendant[] conducted [himself] as [a] model officer," and is more probative as to Defendant Talbot's perception and

---

[1] This citation is to transcript of Plaintiff's August 13, 2020, deposition, which references the page and lines in the deposition transcript itself, and not the page of exhibit, as the exhibit was a condensed version of the deposition transcript.

8

choice of force used, than it is prejudicial to Plaintiff, Plaintiff's motion *in limine* No. 5 should be denied.

VI. **Plaintiff's Motion *in Limine* No. 6 – To Bar Arguments Appealing to Jurors' Pecuniary Interests as Taxpayers.**

Defendant Talbot has no objections to Plaintiff's motion *in limine* No. 6.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By:  /s/ *Alan M. Kus*
David J. Beach, #18531-45
Alan M. Kus, #31388-45
Attorneys for Defendant, Geoffrey Talbot

**EICHHORN & EICHHORN, LLP**
2929 Carlson Dr., Suite 100
Hammond, IN 46323
Telephone: (219)-931-0560
Facsimile:  (219)-931-5370
E-mail:  dbeach@eichhorn-law.com
         akus@eichhorn-law.com

**CERTIFICATE OF SERVICE**

I, Alan M. Kus, certify that on October 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the Case Management / Electronic Case Filing (CM / ECF) system maintained by the United States District Court for the Northern District of Indiana.

*/s/   Alan M. Kus*
Alan M. Kus